The case of the day, 22-13187, Moore v. Lowe. Did he check in? Okay. Just take a brief break. Don't leave me. Sorry. No, I'm sorry. Brian, you can leave. No one else can leave. Yeah, you're correct. All right, Mr. Moore, I see you're here representing yourself. Whenever you get settled, no hurry. The podium is yours. I'm here today doing something I never thought I'd do. After 46 years of practice, I always went by the feeling that a lawyer who represents himself is a fool for a client. Unfortunately, my counsel that had prepared this case had a serious heart attack. Last night, he was treated for open-heart surgery, five bypasses, moved the clot, and saved his life. So, I'm honored to be here to talk to you today about this case. Please understand that this is a difficult matter for me to be addressing these matters. It makes me angry, and sometimes I get off key. But there are three reasons this case is different from any defamation case or most defamation cases you see. And judgment of the lower court should be reversed because of these reasons. One, the Washington Examiner has published its own standards for ethics and review called Standards of Policy and Procedure or Practice. Two, we submitted a letter of retraction after two articles were published by the Washington Examiner, which were ignored. Our retraction notices were ignored by the Washington Examiner. And three, they gave definite opinions on credibility as fact without a factual basis. One cause of action clearly shows all three of these, but they extend throughout all the things that were said in numerous articles and other causes of action. The first was on May 28th by Tiana Lowe, where she said that I was famous for being banned from the mall because he sexually praised underage girls. Well, the first thing I'd like to point out is the court recognized the first word as famous, and there was one of the reasons for dismissal of that as a rhetorical hyperbole. Mr. Moore, before you get into the meat of the statements that you're challenging, let me ask sort of a foundational question, whether or not we have jurisdiction over this case. So it's my understanding that the district court dismissed all of your allegations except for two, all of your claims except for two, and then the district court, in an order under 41A2, dismissed per your request the remaining two claims, and the case has come up here. In Rozelle, a case that we issued in 2023, we talked about whether or not Rule 41 can be used to dismiss claims rather than an entire action, and we concluded in a situation that is remarkably similar to this one that even under 41A2, when there are a couple of remaining claims, a district court cannot just dismiss those claims. If the district court does, that is ineffective, and we don't have jurisdiction. Can you respond to whether or not we have jurisdiction over this appeal? I take it from the district court's dismissal of those claims that you would, and I do not have any further knowledge of that. It will confer, and if we need supplemental briefing on the Rule 41 issue, we'll ask for it from both sides. Yes, ma'am. Yes, sir. Can I ask you about the, you were about to talk about the famous quote. Yes. If Mr. Amos is famous for making cookies, but he actually doesn't make the cookies anymore, he sold his company long ago, is that defamation to say he's famous for making cookies? In other words, is that subject to truth or not, or is that just one of those hyperbolic statements that people don't expect to be subject to truth? In other words, it isn't whether he did it or not, it's whether he's famous for it. And, in fact, he is famous for it, for making the cookies, even though he hasn't made a cookie in 30 or 40 years. Yes, sir. I think that the rhetorical hyperbole in this case is, if it states a fact, it's not rhetorical hyperbole. And if you read the statement for, it goes on to say for mall ban, persisting sex with young girls. I think that it states a fact. If it had alleged mall ban or something, it may be different. But if someone, I apologize for interrupting, if someone is famous for doing something, isn't that separate from whether they, in fact, did it or not? In other words, the statement isn't about whether these allegations happened or not, or whether those allegations, in fact, were made, it's that someone is famous for that. If you're famous for making, you know, having a mall ban, and there's plenty of facts to refute that, I think that that's a way of making a statement as a fact. And I think it's not rhetorical hyperbole. But the district court dismissed that on numerous other reports. And that's what I was going to talk about, is that basically those other reports come from a statement made by a man by the name of Glenn Wilson. Glenn Wilson, in the blog, understands that Soros told him that I had solicited sex with girls and was banned from the mall. When Charles Bethea, who published a New Yorker on the day after Bethea's article, asked him what, who were his sources, he said, well, they were unnamed. He would not divulge his sources. Charles Bethea in the New Yorker article, which was actually spoken of by the trial court judge, said that he would not divulge his sources. Well, what we're bringing up here is that the Washington Examiner has a policy called unnamed sources. They have special care taken for anonymous reports. And I think a mock case says a defendant is a good lady. It would be unlikely to prove persuasive, for example, when the story is fabricated by a defendant as a product of imagination or is based totally wholly on unverified anonymous telephone call. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of the report. I think there's plenty of doubt in this case. I think you were referring to our case law, which we've reaffirmed fairly recently, that if a statement is based off of many published reports, that it's difficult to meet the actual malice standard. And so with regard to what I'll call the mall ban, on page 35 of your opponent's brief, they lay out a chart with it looks like more than a dozen references and media outlets to a mall ban. Again, regardless of the truth of that, let's assume none of them are right and it's completely untrue. Could someone be malicious in repeating something that many reputable sources have themselves reported? Yes, sir, I think they can. I think that in this case, the Washington Examiner had to see this. It was based on an anonymous report and it conflicts with their stated policies and procedures. And when they depart from their stated policy and procedure, according to Michael versus NYP Holdings, it's an 11th Circuit case. The publisher's willful departure from its own stated standards is clear evidence of intent to avoid the truth, purposeful avoidance of truth. Yes, sir, I think they can be found actual malice. What about the fact that a New York Times article reported without referring to Wilson's or Bethea's articles that Becky Gray alleged that in her late teens or early 20s she frequently saw you talking with young women at the mall and that you would not leave her alone and she was later told that you had been banned from the mall? Well, I can't address Becky Gray who was 28. But that's not an anonymous, that's the New York Times reporting and revealing a source. She didn't say I was banned from the mall for soliciting sex with young girls, no. Can I ask you a question just about this statement as well? And I think this is more generically applicable perhaps. But with respect to Judge Luck's question about rhetorical hyperbole, to what extent is the context of the entire piece relevant, right? So the famous statement, you know, it comes in an opinion piece. It's got some other, that piece has some other pretty florid language in it. You know, comic book villain, skunk, another round at the rodeo. It's all pretty figurative language. Shouldn't we take that into account in determining whether or not the famous statement was a statement of fact? Statement of fact and statement of somebody's a skunk is two different things. That's an opinion. Couldn't be fact, skunk. But the other is a factual statement. And I think because they have standards against taking anonymity and making it factual by their own standards, as they departed from it, from the 11th Circuit case, that when they depart from their own standards and they accept stuff like that, that they could be potentially avoiding the truth, purposely avoiding some truth. I guess I'm not sure that's all that responsive to my question. I think it might be responsive to Judge Luck's question about the level of culpability, whether it's negligent or malicious or whatever. But I'm not sure that answers the question about rhetorical hyperbole, whether this piece, this opinion piece that uses all of this, you know, maybe over-the-top language. I think Judge Corbyn has rhetorical hyperbole, but I don't think that's why he dismissed it. I think he dismissed it because that's part of the statement, but he dismissed it on most of the previous reports. And I think all those reports were based on an anonymous source. There was never any identity, and it's a standard of the Washington Examiner not to use that kind of evidence. I didn't make their standards. They made their own standards. They ignored their own standards, and I think they can be held for that. So just a fair warning, you're coming down to the end of your time. Do you want to reserve your further points for rebuttal? I think the last thing I would like to say is about credibility. Throughout, Tiana Lowe and Brad Palumbo said things like it was overwhelmingly likely to be true, damning if true, and overwhelmingly likely to be true. And we sent a retraction letter stating that I had taken a polygraph and passed the polygraph with reference to the only two women that have ever accused me of anything as teenagers. But isn't the statement that the writer believes it is overwhelmingly likely to be true a statement of opinion? No, I think it states no fact. When they got the retraction letter before them and by the 11th Circuit's own case law, Smart v. Miami, where somebody's willing to take a polygraph and does take a polygraph, or took a polygraph and was willing to take a polygraph, is relevant and admissible evidence for credibility purposes. What if the author had said expressly, in my opinion, this allegation is overwhelmingly likely to be true? No, I don't think it is. Really? I don't think it is. I think it's not based on the factual. She said it was likely to be true, assuming facts that were not listed. Well, but she's got allegations of young women that you have admitted to in the complaint that you were accused of, and then you're saying I didn't do it. Why is this not merely a statement of opinion when the author is weighing in on this issue? Well, I think that going back to this is the credibility issue was put into question when I sent the retraction letter. They simply ignored it. But isn't she at liberty, as Judge Branch says, to have an opinion? Whether, you know, she receives the retraction letter. When you state as a journalist that it's overwhelmingly likely to be true, and then later said something that accused Predator, and I think she's making statements about the credibility. And I think that credibility should have been in question. They should have asked. They should have looked. They can't be responsible, actually, for simply failing to investigate. But when they fail to investigate and they've got a reason that's put before them, they should look at it. And I think when they don't, that they can be a purposeful awardist of truth. Okay. Let's – I'll let you save the remainder of your points for rebuttal, and we'll hear from your adversary. Mr. Severson. Thank you, Your Honor. Good morning. May it please the court. Daniel Severson for defendants' appellees. Judge Branch, let me address your question about jurisdiction. I think there are really two questions at issue. One is finality, and the other is Rule 41. As to finality, I think we fit squarely within Corley because the court has held that an order granting a motion to voluntarily dismiss the remainder of a complaint under 41A2 qualifies as a final judgment for purposes of appeal. In addition, although Judge Mays' order didn't specify whether it was with or without prejudice, and so it's presumed to be without prejudice to refiling, here the statute of limitations would bar the remaining claims from being filed. So that provides the prejudice. And in addition, Mr. Moore conceded in his response to the jurisdictional questions that his intent was to abandon those claims. So that effectively converted the dismissal without prejudice into a functional dismissal with prejudice. As to the Rule 41 question in Rozelle, Rozelle held that Rule ‑‑ I believe Rozelle was addressing a Rule 41A1 dismissal, and then it said, well, because the court didn't address what specific rule it was looking at, we'll also consider Rule 41A2. I think we can distinguish Rozelle on the basis of it being really a stipulation under 41A1. But most importantly, to the extent Rozelle addresses 41A2, it conflicts with this court's earlier precedent in McGregor, which poorly says we must follow. And in McGregor, there was only a single defendant. The plaintiff had filed a motion to dismiss. The court granted one ‑‑ sorry, the defendant filed a motion to dismiss, granted the first dismissal on the first count. And then as the case approached trial, the plaintiff wasn't able to proceed to trial because his counsel wasn't available, and he asked to voluntarily dismiss the remainder of the claims. Isn't the difference when the Rule 41 happens? I don't know that I agree with you that there's any difference between a stipulation, a motion, or an order or a notice. I think the language uses action in the same way, and we've treated it the same way. We said that in Sanchez within the last month or two. But I think what I hear you saying, and you may be right, is where there's only one claim left after dismissal or summary judgment, you're essentially dismissing the action because the only action that's left is the one claim. So that is the action. Whereas if the Rule 41 comes before the summary judgment or before a 12B6 dismissal, dismissing a claim is not the dismissal of an action, and therefore whatever happens in the partial summary judgment or partial dismissal is not a final order. Is that what I understand you to be saying? I think there's one way of harmonizing it if you want to take a textual approach to the action and to say that at the time the district court granted Mr. Moore's request, the action was the remainder of the claim. Right. I think that's a textualist reading that harmonizes Judge Mays' ruling. But I would say that McGregor did say that it was a final order dismissing the action, and in there there was one defendant. So it's the same situation where there are three claims. Right. But McGregor was the situation that I described, which is there was – I can't remember if it was dismissal or summary judgment, but one of those things happened first. And then because that was really what the plaintiff wanted to appeal, he or she dismissed the rest under Rule 41. And the court may have been – I think what we said is the court was allowed to do that because all that's left, that is the rest of the action. So that is a valid Rule 41 dismissal from which an appeal can be taken. Yes, and that's the situation here. So I think I'm agreeing with you. I'm just trying to say what the difference might be between some of our other cases where the Rule 41 came first or not. The other thing is Corley, as you point out, though, is dealing simply with the – whether something is an appealable order and less with whether something is valid under Rule 41, right? Correct. But in order to be a valid – in order to be final and appealable, I think the necessary implication is that the ruling had to be valid. Holdings by implication are really good things in general. But in jurisdictional rulings, we tend to be real tight with that. And we tend to require not implication rule holdings for jurisdiction, but requiring actual ones because of the significance of those holdings. And so I have to go back and read Corley. I was on the panel, so I know the case well, but it's been a while. I'm not sure that we ruled on the Rule 41 issue on whether it was valid. I think what we said was it's final for appealability purposes, but not that it was a valid dismissal under Rule 41. Do I have that right? I think that's right, although I think it had to have been valid in order for it to be final and appealable because if the implication is the court doesn't have jurisdiction because Judge Mays violated Rule 41, then it had to have been that the rule wasn't valid. But I think there's an alternative way also to find jurisdiction here, which is in Clay. The court said that if the request for dismissal does not cite a rule, the court has the power to construe it as granting a motion to amend the complaint, to drop the remaining claims and conform it to the prior dismissal order. And I think Mr. Moore's request didn't cite a rule, and so one way to address this case is to say that Judge Mays' order, the Levin Circuit can construe it as dropping the complaint. I know we said that in Dicta and Clay. I can tell you that I'm less of a fan of that. I have no idea, and I have not spoken to anybody else about it. But it seems to me to be problematic when we are reconstruing something that historically happened in a district court solely for our convenience to give ourselves jurisdiction. But you're right that that exists out there, and you're right in unpublished orders we've done that. But I would point out that there's an amended order in this case that says the court construes Moore's notice as a motion for voluntary dismissal, and it cites 41A2. That's right, because Mr. Moore didn't cite a rule. He was proceeding pro se at the time, and Judge Mays interpreted his rule under Rule 41A2. I think this Court could reinterpret it, recharacterize it as under Rule 15. I wanted to ask about the merits. I don't want to occupy us for too long on this. I will tell you that I am most troubled by the statements, at least with regard to whether they are actionable statements, in other words, factual statements. The overwhelmingly likely to be true statement, and a little less so, but similarly, the credibility statements. Because those seem to indicate, especially the first one, importing some sort of truth. So let me ask you this. Let me ask you this hypothetical. If the hypothetical was, I believe that Mr. Smith is guilty of sexual misconduct, is that an actual actionable statement? If it implies undisclosed facts, Mr. Moore conceded in his brief that the Turner Rule applies that if a reasonable reader would understand from the widespread coverage what the facts are, or in this case where the writers provided hyperlinks to provide examples of the prior report. I'm not talking about truth. I'm talking about whether it's subject to truth. You may be right in terms of whether it's actionable, in terms of actual malice. I'm talking about is this a statement that's subject to truth, as opposed to rhetorical, hyperbole, or anything else. The statement, I believe Smith is guilty of sexual misconduct. Well, I do think if you just add the word opinion, in my opinion. I'm not adding that. I'm adding it is what I just said. Is what I just said subject to truth? Is that testable? I think when you say something's credible or overwhelmingly likely to be true, that's inherently a pure opinion. I think Judge Mays got that correct. Why is that inherently an opinion? So I understand why the hypothetical Judge Newsom asked you about, which is, in my opinion, these are credible. That is inherently an opinion. But the statement, he has been credibly alleged to have done X, or these are the allegations, and they are overwhelmingly likely to be true. How is that not beyond opinion, but a statement of what truth is? Because of the context of the article. If you look at the article. So just putting opinion on the top, that does it? No, it's not just that there's opinion. That's part of it. But if you look at the language, I think as Judge Newsom was pointing out, Lowe writes that Mr. Moore wanted another round of the rodeo, and he's famous for the mall ban. These are rhetorical hyperbole. No reasonable reader would understand that the writer is engaging in a fact-finding exercise. And importantly, under the court's decision in Keller, you need to look at the hushed story. I think just in fairness, you may be conflating articles. I actually think you might have a point to make about this one as well. But I don't think anyway that you can take rhetorical hyperbole from the mall ban article to sanitize this one. Right? You're talking about the overwhelmingly likely? Yeah, the overwhelmingly likely. But, you know, I think there, too, that article refers to the worst person in American politics, an indefendable person, a despicable person. It's sort of like overhyped rhetoric. So you might have the same point, but I just don't think we can go to the mall ban argument to answer the question about this statement. That's correct, Judge Newsom. But then in addition, I think if you look at the very next sentence, she says, and it's hyperlinked. So, again, she's providing a source, and the court's precedent holds that if you provide links or sources, then that the reader can come to their own conclusion. In addition, later in the paragraph, it says that she believes that the allegations are true because for comparison, Justice Kavanaugh's accuser never named him until after his name appeared on a Supreme Court shortlist in 2012, whereas Horfman told sources at the time of the accusation. So I think she's providing an additional basis for her. Isn't that an indication? Isn't that exactly the contextual indication that she does mean this to be fact, not just a rhetorical device about how much Mr. Smith is a skunk or a terrible person or the worst person in politics? No, because if you look at the sentence, it says the more allegations are both, A, damning if true. Right. So she's not saying that they're true. And then B, by the way, the use of A and B generally isn't an opinion-y sort of thing, but okay, damning if true, and B, overwhelmingly likely to be true. In other words, these are the allegations, and they're really bad if true, and then I am stating that they are? But I think, again, it clearly marks his opinion piece. It's coming two years after all these allegations surfaced. She had never had to comment on how those widespread allegations that, in her view, were credible. There were all sorts of sources that are in the record. But it didn't state, in my view, I've looked into this, in my view, I believe this to be credible. That's different in kind from stating these are really terrible allegations if they're true, and they're overwhelmingly likely to be true. But, again, I don't think anyone would understand that she's done a factual investigation. What's your best case that the statement something is overwhelmingly likely to be true is hyperbolic or rhetorical or whatever? Because I've looked at as many Alabama and Supreme Court and 11th Circuit cases as I can, and this seems to come pretty close to the line. I think the district court cited the Turner decision that statements of pure opinion are protected. In that case, there was a report about the football club and the allegations that had occurred, and so they were characterizing, and it was clearly marked in our opinion. In that case, it was an investigation that had occurred. Here, it's clear. It's a marked opinion. Again, it's the historical context, which I think this court made clear in Keller. If you look back, this is commenting on allegations that had surfaced two years earlier. No reasonable reader would think that she was implying on this sort of thing. Let's assume I disagree with you on that. Tell me why you'd win anyway on the actual malice standard. Because she's relying on a multitude of prior reports under Rosanova and Berisha, as Judge O'Scanlan wrote for the court. I think that this court's precedent is clear on that. That completely vitiates any of the factual malice. That's certainly true where someone reports allegations. So, in other words, so-and-so is alleged to have done X or Y. It, of course, stands to reason that where 20 other people have reported those exact allegations, you can credibly report that. So I understand that. But where you're presenting your opinion as something that's overwhelmingly likely to be true, how then can you say that because people reported allegations, does that make it overwhelmingly likely to be true? How is that not a step further removed, or how can we not use that line of cases to apply to this context where someone is swearing to the likely truth of something? Well, again, I think this case is different because the article expressly provides a reason for her belief. So that's the actual malice part is that there's at least some basis for the belief that's expressed in the article? She cited the original named sources, the women who went on the record and made those allegations, and then she also compared it to different allegations that had surfaced in other contexts. So that itself shows that it wasn't malicious, that she at least had in her mind a good faith belief that this was correct. At the pleading stage, Mr. Moore's obligation is to come forward with facts that plausibly suggest defendants had a high awareness of probable falsity. I think the district court was correct in dismissing the complaint for not alleging suffocation. But he gives a number of facts. He says, A, I retracted, especially as to these two allegations that are laid out here. I sent a retraction letter stating that they were not true and specifically denied. I offered myself as a polygraph. This seemed to not comply with the policies of the newspaper, and they had ill will, they did not like me, and this reporter was biased against me. That's the malice case. Why is that not sufficient collectively? None of those are enough. The Supreme Court's precedent is clear that ill will is not sufficient. Extreme departure from journalist standards is not sufficient. What the case law seems to suggest is those aren't sufficient independently, but has any case said that collectively those things are insufficient? I'm not aware of any case where those have all been analyzed at once, but I would point the court to St. Amant, which has hallmarks of actual malice, where there's an anonymous, unverified source, a highly improbable story, something that was fabricated by the defendant, or even Connaughton where the court sustained actual malice because the defendant purposefully avoided interviewing somebody and was doing a report there. Here, they're just commenting on prior allegations, and we don't fit within any of those hallmarks of actual malice, and I'd point the court to the Eleventh Circuit's decision in LaVon, which expressly distinguished Connaughton, which is the one Supreme Court case that sustained a holding of actual malice. I see that my time has expired. If the court doesn't have any further questions, we'd ask that you affirm the district court's judgment. Thank you very much. Mr. Moore, let's hear from you in rebuttal. As far as whether something's true or not, we use ill-will motives. The Supreme Court, part Hanks, said that although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it goes on to say, and it cannot be said that evidence concerning motive or care never bears any relation to actual malice inquiry. Thus, we are satisfied the Court of Appeals has judged the case. I know you dispute, or your counsel disputed this in the brief, but in Dunn, we seem to suggest contrary. Here, I'll read from Dunn. This is footnote 17 of the case. Ill-will, improper motive, or personal animosity plays no role in determining whether a defendant acted with actual malice. I think that's used in Supreme Court rulings. There might be tension. Pardon? There might be tension. There might be what? Tension. A tension? Tension between the two. Oh, there might be tension, but I think the Supreme Court's clearly ruled that state of mind can be inquired into and motive and purpose, and they found that in Herbert v. Lando. I also think, I want to say one more thing before I finish here, that we say that our letter of retraction put them on notice that there was a counter opinion, really, about the mall ban totally by Barnes-Boyles, who said there was no mall ban and he managed the mall. And as if they didn't know it, they already knew that because they were one of the first papers to report Barnes-Boyles' statement back in 2017. So they ignored the letter for retraction. They ignored the fact that there was countervailing evidence and made a statement as a fact, and it clearly is not a fact. Your Honor, we've got several other parts of the accusations that were made. I don't think I have time to go into those, but clearly I think they've ignored their own standards, and I think that's purposeful avoidance of the truth, according to the Supreme Court. I think that the credibility standard set by the 11th Circuit should have been considered by the Washington Examiner before they made these statements. And I think when they do make these statements as a national newspaper and a reporter whose standards say they investigate facts, they don't just take it from other reporters. I think that when they make statements like that and that's their standards, I think that is actual malice and purposeful avoidance of the truth. Thank you very much, Mr. Moore. All right, so that case is submitted, and the Court will be in recess until tomorrow morning at 9 a.m. All rise.